M.L. JOHNSON, Plaintiff–Appellant,

v.

COLORADO STATE BOARD OF AGRI-
CULTURE and Colorado State Uni-
versity, Defendants–Appellees.

No. 99CA2230.

Colorado Court of Appeals,
Div. IV.

Nov. 9, 2000.

Randall R. Meyers, Fort Collins, CO, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Christine M. Arguello, Assistant Attorney General, Denver, CO, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

Plaintiff, M.L. Johnson, a tenured professor at Colorado State University (CSU), appeals the summary judgment in favor of defendants, CSU and the Colorado State Board of Agriculture (SBA), denying plaintiff's claim that CSU retrospectively applied a Comprehensive Performance Review of Tenured Faculty policy (policy). We affirm.

In 1997, the SBA amended its faculty manual and adopted a policy for Comprehensive Performance Review of Tenured Faculty. Plaintiff was given unsatisfactory reviews in 1997 and 1998, which were based in part on a summary of his past annual reviews.

Although he sought administrative review of the 1998 evaluation, he also initiated this action for declaratory judgment and injunctive relief, in which he asserted that CSU had applied the policy improperly. Defendants sought dismissal, and, based on its determination that, because the policy was merely procedural, it was not retrospective, the trial court entered summary judgment in their favor.

Plaintiff contends that the trial court improperly granted summary judgment in favor of CSU. He asserts that the trial court erred as a matter of law in concluding the policy was not retrospectively applied when it decided, or failed to decide, that the SBA intended the policy to be applied retroactively. We disagree.

A. Standard of Review

In resolving the issues before us, we must independently review the record and evaluate the motion for summary judgment

in the same manner as the trial court. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995). As pertinent here, entry of summary judgment was proper only if there were no disputed issues of material fact to be resolved, and only if the issues for decision were legal questions based upon undisputed facts. *See Kaiser Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987).

For purposes of our analysis, we consider the SBA a state agency. *See* § 23–30–111, C.R.S.2000 (SBA is a state agency).

■ In construing an administrative rule or regulation, we apply the same basic rules of construction as we would in the interpretation of a statute. *Ledbury v. Department of Higher Education,* 962 P.2d 308 (Colo.App. 1997).

■ In interpreting a statute, our primary task is to determine and give effect to the intent, or purpose, of the General Assembly, *Denver v. Gallegos,* 916 P.2d 509 (Colo.1996), or here, the SBA. That intent is first determined by looking at the statutory language itself, giving words and phrases their commonly understood meaning. *See Mason v. Adams,* 961 P.2d 540 (Colo.App.1997).

■ As a threshold matter, because they are outside the record, we decline to consider exhibits "A" through "E" attached to plaintiff's brief. *See Westrac, Inc. v. Walker Field, Colo., Public Airport Authority,* 812 P.2d 714 (Colo.App.1991)(bare statements made in briefs cannot supply that which must appear from a certified record).

### B. Interpretation of the Policy

■ Plaintiff contends that Phase I reviews under the policy should begin after a five-year waiting period and that this contention is supported by "legislative history." We are not persuaded.

At the outset, we note that alleged statements of the CSU council upon which plaintiff relies cannot be considered legislative history.

CSU has a faculty council made up of faculty members who serve in an advisory capacity to the SBA, and this council was instrumental in drafting and recommending the policy be added to the manual. However, the SBA is responsible for the general control and supervision of CSU. The SBA has "plenary power to adopt all such ordinances, bylaws and regulations, not in conflict with law, as [it] may deem necessary to secure the successful operation of the university and promote the designed objects." Section 23–31–108, C.R.S.2000. Thus, the SBA is the only body with authority to change the manual.

Here, the pre-amendment manual did not specify when reviews were to occur, and procedures for disciplinary action could be initiated at any time. The new policy provides:

> Phase I ... *Reviews of all tenured faculty shall be conducted ... at intervals of five years following the acquisition of tenure* or if there are two unsatisfactory annual reviews within a five year period. [They] shall be based upon a summary of all annual reviews since the last comprehensive review or acquisition of tenure.... The department head shall provide an overall assessment of the faculty member's performance. The evaluations should identify strengths and any deficiencies .... *If a faculty member has deficiencies ... the department head, in consultation with the faculty member, should prepare a specific professional development plan* to assist the faculty member in meeting the departmental expectations ... *If the evaluation from a Phase I [review] is unsatisfactory, a Phase II [review] shall be conducted.* (emphasis added)

■ Although this language does not reveal precisely when the reviews should commence for previously tenured faculty, there is also no language in the new policy to suggest that the SBA desired a five-year waiting period before the policy would apply to previously tenured faculty. To the extent the policy is ambiguous, the court may look to the policy's purpose to determine intent. *See* § 2–4–203(1)(g), C.R.S.2000 (if a statute is ambiguous, the court, in determining the intention of the General Assembly, may consider among other matters, the legislative declaration or purpose).

Here, the purposes behind the policy imply that no waiting period was intended. The policy states that its purpose is "to facilitate continued professional development, refocus professional efforts when appropriate, and to assure that faculty members are meeting their obligations to the University." *See Bowland v. Industrial Claim Appeals Office*, 984 P.2d 660 (Colo.App.1998)(if a plain reading of a statute does not reveal intent, the court may then look to other indicators, including the object sought to be obtained).

To impose a five-year moratorium on the policy with respect to previously tenured faculty would frustrate this purpose. In order to enhance CSU's effectiveness as an institution of higher learning, the goal of continued professional development must apply to all faculty members.

Thus, immediate application of the Phase I review was proper.

### C. The Policy is Procedural

■ Plaintiff also contends that the trial court erred in concluding the policy was not applied retrospectively. In support, he asserts that the court did not determine that the SBA intended the policy to apply Phase I reviews retroactively to previously tenured professors. We are not persuaded.

■ The first step in deciding if the policy is retrospective is to determine whether the drafters intended a retroactive effect. The second step is deciding whether the policy, as applied, is retrospective. Unconstitutional retroactive application of a statute is termed retrospective. *See Shell Western E & P, Inc. v. Dolores County Board of Commissioners*, 948 P.2d 1002 (Colo.1997).

Here, we first compare the faculty manual before and after the SBA added the policy. The faculty manual governs both faculty and administrative professionals at CSU. Discipline of tenured faculty, including revocation of tenure, is governed by § E.9.7. Sections E.9.7.5.2 and E.9.7.5.3 require that at least a two-thirds majority of a hearing committee agree in order to recommend that tenure be retained and disciplinary action taken, or to recommend that tenure be revoked.

Substantive standards of performance are found in §§ E.2 and E.10 of the manual. Section E.2 lays out faculty responsibilities and guidelines concerning teaching and advising. Section E.10 governs the criteria by which faculty members are promoted, advanced in rank, and given salary raises.

The SBA amended the manual and adopted the policy at issue here in 1997, but did not change the disciplinary provisions in § E.9.7 of the manual. In fact, the policy itself refers to § E.9.7, stating: "In the event that conditions set forth in Section E.9.7 are present, the committee will recommend the initiation of procedures which may result in possible sanctions up to and including tenure revocation."

The new policy provides for a two-step review of tenured faculty, possible implementation of a professional development plan, and the potential for Phase II review. Plaintiff challenges only Phase I review.

Plaintiff acknowledges that he was subject to annual performance reviews and that he has had such reviews since he gained tenure in 1981. There is no evidence indicating that any of the previous reviews was unsatisfactory. He has also conceded that a plain reading of the policy's language is "an express declaration that past actions can be used during Phase I reviews" and that such language demonstrates that the "[p]olicy is intended to be retroactive."

■ Because the policy is retroactive, the dispositive issue becomes whether it is retrospective.

■ Colo. Const. art. II, § 11, provides that the General Assembly shall pass no law retrospective in its operation. An act violates this constitutional prohibition if it: (1) takes away or impairs vested rights acquired under existing laws, (2) creates a new obligation, (3) imposes a new duty, or (4) attaches a new disability with respect to transactions or considerations already past. *Shell Western E & P, Inc. v. Dolores County Board of Commissioners, supra.*

■ Legislation is applied prospectively when it operates on transactions that occur after its effective date. It applies "retroac-

tively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date." *Shell Western E & P, Inc. v. Dolores County Board of Commissioners, supra,* 948 P.2d at 1011.

█ Retroactive application of a statute (or here, a policy) is not necessarily unconstitutional. It is permitted where the statute effects a change that is merely *procedural* or remedial in nature. This is because a change in remedy does not constitute the impairment of a vested right, "for there is no such thing as a vested right in remedies." *Kuhn v. State,* 924 P.2d 1053, 1056–57 (Colo.1996).

Here, plaintiff has had a contract with CSU since at least 1981. Under that contract, he has continually been subject to discipline under § E.9.7. of the manual discussed above. The challenged policy still subjects plaintiff to discipline, but merely establishes a different procedural framework. It does not take away any vested right, and it imposes no new obligations or duties. Nor does it attach any new disability. The standards applied to plaintiff are the same as those in effect before the policy was adopted. The policy, however, allows for the design of a professional development plan rather than discipline. The plaintiff has always been subject to review under § E.7.1, which requires a showing of unsatisfactory performance over a substantial period of time.

We thus conclude that the new policy is procedural in nature.

We also reject plaintiff's contention that the court improperly decided whether "the SBA *could* apply Phase I reviews under the Policy retroactively without deciding that Phase I reviews *should* be applied retroactively to previously tenured professors ."

█ Legislation is presumed to have prospective effect unless the General Assembly expresses a contrary intent. For legislation to be given retroactive effect without being unconstitutional, it must clearly be the intent of the General Assembly to do so, but that intent need not be explicitly expressed in the legislation. *Shell Western E & P, Inc. v. Dolores County Board of Commissioners, supra; Villa at Greeley, Inc. v. Hopper,* 917 P.2d 350 (Colo.App.1996). Such principles also apply here to the intent of the SBA.

Here, as plaintiff concedes, a review of the policy indicates that the SBA intended the policy to be retroactive. This intent is shown by the policy's language: "[R]eviews ... shall be based upon a summary of all annual reviews since the last comprehensive review or acquisition of tenure...."

However, the policy is not retrospective under the four-prong *Shell* test. The policy does not take away or impair vested rights, create a new obligation, impose a new duty, or attach a new disability.

Thus, the fact that the policy allows the SBA to consider past annual reviews to review plaintiff's performance does not make the policy retrospective. *See Regions Hospital v. Shalala,* 522 U.S. 448, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998)(where an amendment to a regulation changes the process, but not the standards applied during the process, the amendment is not impermissibly retroactive); *Shell Western E & P, Inc. v. Dolores Board of Commissioners, supra* (the abolition of an old remedy does not impair a vested right or impose a new duty).

Accordingly, the judgment is affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.